IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| FREDDIE LEWIS IRVIN,<br><br>      Plaintiff,<br><br>    v.<br><br>JEFF COLEMAN, et al.,<br><br>      Defendants. | CIVIL ACTION NO.: 5:20-cv-91 |

**REPORT AND RECOMMENDATION**

This matter comes before the Court on Defendants Antoine Caldwell, Edginald Gibbons, and Helen Wright's Motion to Dismiss, doc. 13, and Defendant Edwina Johnson's Motion to Dismiss, doc. 17.[1] These Defendants move to dismiss based on Plaintiff's failure to exhaust his available administrative remedies. Defendants' Motions are nearly identical. Compare Doc. 13 with Doc. 17. Plaintiff filed Responses opposing Defendants' Motions. Docs. 15, 21. Defendants filed Replies. Docs. 20, 23. Plaintiff filed a Surreply to Defendants Caldwell, Gibbons, and Wright's Reply. Doc. 24.

For the following reasons, I **RECOMMEND** the Court **DENY** Defendants' Motions to Dismiss. Doc. 13, 17. Plaintiff's claims against Defendants, including his claims against Defendants Coleman and Wicker, remain pending.

---

[1]  Defendants Coleman and Wicker have not moved to dismiss, nor have they appeared in the case. Doc. 27.

## PROCEDURAL HISTORY

Plaintiff brought this suit, asserting claims under 42 U.S.C. § 1983 for Defendants transferring him from Johnson State Prison to Ware State Prison, which he alleges is a dangerous and hostile prison environment. Doc. 1. After conducting frivolity review, the Court dismissed Plaintiff's claims for monetary damages against Defendants in their official capacities. Doc. 10. However, Plaintiff was permitted to proceed on his First Amendment retaliation claim and Eighth Amendment deliberate indifference claim against Defendants Caldwell, Coleman, Gibbons, Johnson, Wicker, and Wright. Id.

Plaintiff brings a claim against Defendants for an allegedly retaliatory transfer from Johnson State Prison to Ware State Prison, which he contends Defendants initiated and coordinated because he filed various lawsuits and grievances, violating his First Amendment rights. Doc. 1 at 7–11. Additionally, Plaintiff alleges Defendants purposefully placed him at Ware State Prison, which is a dangerous and hostile environment, and Defendants were deliberately indifferent to this danger, violating his Eighth Amendment rights. Id. at 13–14.

In their Motions, Defendants Caldwell, Gibbons, Wright, and Johnson argue Plaintiff's claims against them should be dismissed because Plaintiff failed to exhaust available administrative remedies prior to filing suit. Doc. 13-1 at 3–7; Doc. 17-1 at 3–7. Plaintiff filed Responses to both Motions to Dismiss, arguing he properly exhausted available administrative remedies. Docs. 15, 21. Defendants Caldwell, Gibbons, and Wright filed a Reply. Doc. 20. Plaintiff filed a Surreply to Defendants Caldwell, Gibbons, and Wright's Reply. Doc. 24.

## DISCUSSION

I.  **Prison Litigation Reform Act's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance

2

procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  "[A]n inmate alleging harm

3

suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.   Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F.

4

App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche, 783 F.3d at 121; Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[ ] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 136 S. Ct. at 1858–59; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60. Finally, "when prison administrators thwart

5

inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero, 2018 WL 3861351, at *1. This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is]

permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376 ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.")).

### III. Applying Turner

Defendants argue Plaintiff's Complaint should be dismissed because he failed to file grievances or follow the prison's grievance procedures and, thus, did not properly exhaust his available administrative remedies prior to filing suit. Doc. 13-1 at 2; Doc. 17-1 at 2.

#### A. The Georgia Department of Corrections' ("GDC") Administrative Remedies

Both Ware State Prison and Johnson State Prison utilize the GDC's procedures for prisoner grievances. Doc. 13-2 at 1; Doc. 17-2 at 1. The GDC's grievance procedure is set out in Standard Operating Procedure ("SOP") 227.02. Doc. 13-2 at 6–24; Doc. 17-2 at 6–24. SOP 227.02 contains the policy for general grievances. Doc. 13-2 at 2–3, 9–10; Doc. 17-2 at 2–3, 9–10. Under SOP 227.02, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" that "personally affects the offender" and which is not explicitly listed in the SOP as a "non-grievable issue." Doc. 13-2 at 9; Doc. 17-2 at 9. An inmate may file a grievance alleging relation or harassment, regardless of the form of the alleged retaliation or harassment. Doc. 13-2 at 10; Doc. 17-2 at 10; Doc. 20-1 at 8. The grievance procedure consists

7

of two steps, the original grievance and the Central Office Appeal.  Doc. 13-2 at 3; Doc. 17-2 at 3.  Under SOP 227.02, original grievances must be filed within 10 days from the date the inmate knew or should have known of the facts giving rise to the grievance.  Doc. 13-2 at 3, 13; Doc. 17-2 at 3, 13.  Importantly, transfers of offenders between facilities are identified as non-grievable issues in the SOP.  Doc. 13-2 at 10; Doc. 17-2 at 10.

Additionally, inmates have the right for a classification review and appeal process and those policies are set out in SOP 220.03.  Doc. 20 at 2; Doc. 20-1 at 3, 8.  SOP 220.03 allows inmates to dispute their housing assignments, program assignments, security classifications, or work assignments if there is an alleged threat to the inmate's health or safety.  Doc. 20-1 at 8.  SOP 220.03 requires inmates to file a Classification Appeal Form to appeal housing assignments and security classifications.  Doc. 20-1 at 3.

### B.      Whether Plaintiff Exhausted His Available Administrative Remedies

Defendants Gibbons, Wright, Caldwell, and Johnson argue dismissal is appropriate because Plaintiff did not properly exhaust his available administrative remedies.  Docs. 13, 17.

#### 1.      *Defendants Gibbons, Wright, and Caldwell have not demonstrated remedies are available.*

Defendants Gibbons, Wright, and Caldwell argue dismissal is appropriate because Plaintiff did not file a grievance within 10 days of January 24, 2019, relating to an allegedly fabricated disciplinary report and retaliatory transfer against those Defendants.  Doc. 13-1 at 6; Doc. 20 at 1.  While Defendants acknowledge Plaintiff filed Grievance Number 282866 on January 28, 2019, they assert that grievance does not name Defendants Gibbons, Caldwell, or Wright.  Doc. 13-2 at 4; Doc. 20 at 1.  Similarly, Defendants argue Plaintiff failed to file a grievance within 10 days of arriving at Ware State Prison—April 4, 2019—relating to the allegedly dangerous and hostile environment he faced at Ware State Prison.  Id.

8

In response to Defendants Gibbons, Wright, and Caldwell, Plaintiff argues he did not file a grievance about the allegedly false disciplinary report issued in retaliation because it is not a grievable issue. Doc. 15 at 2. Plaintiff admits Grievance Number 282866 does not pertain to his claims currently before the Court. Doc. 24 at 1. Plaintiff further argues that although he arrived at Ware State Prison on April 4, 2019, he did not realize the facility was a dangerous and hostile environment until November 19, 2019, and he promptly filed a grievance about those conditions the same day—Grievance Number 303054—and asked to be assigned to medium security housing. Id.

In their Reply, Defendants assert Grievance Number 303054, filed on November 19, 2019, and which complains of the dangerous conditions at Ware State Prison, does not demonstrate proper exhaustion. Doc. 20 at 1–3. According to Defendants, Grievance Number 303054 does not constitute exhaustion because Plaintiff utilized the general prison grievance system governed by SOP 227.02 instead of following the policies laid out in SOP 220.03, which is the proper channel for challenging housing assignments and security classifications.[2] Id.

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82. Plaintiff's allegations and Defendants' allegations do not conflict. Instead, the parties disagree on the legal implications of Plaintiff's grievances, or lack thereof.

Plaintiff is plainly required to exhaust available administrative remedies—but, here, Defendants Gibbons, Wright, and Caldwell have not shown there were administrative remedies

---

[2]    Defendants Gibbons, Wright, and Caldwell appear to have intended to attach SOP 220.03 to their Reply. Doc. 20. However, they instead re-submitted SOP 227.02 to the Court. Doc. 20-1.

9

available to grieve transfers of offenders between facilities. Doc. 13-1 at 10; Doc. 17-1 at 10. Plaintiff's claims against Defendants Gibbons, Wright, and Caldwell are based on his transfer from Johnson State Prison to Ware State Prison. Plaintiff contends: (1) he was transferred in violation of his First Amendment rights; and (2) the transfer to Ware State Prison violates his Eighth Amendment rights. According to the GDC's SOP 227.02, these claims involve a non-grievable issue, namely transfers between institutions. Similarly, Plaintiff's claims could not be addressed through the procedures in SOP 220.03, because classification and housing assignments are distinct from facility transfers. Therefore, no administrative remedies were available to Plaintiff for these claims. See Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Benning v. Georgia, No. 5:08-CV-435, 2010 WL 4000616, at *1 (M.D. Ga. Oct. 12, 2010) (finding exhaustion is not available for non-grievable issues).

Defendants Gibbons, Wright, and Caldwell insist Plaintiff was required to utilize the grievance procedure provided by SOP 220.03, but this argument misreads the policy. According to the information provided to the Court, SOP 220.03 provides an inmate administrative remedies to grieve housing assignments, program assignments, security classifications, or work assignments when there is a threat to the inmate's health or safety. However, nothing in the information Defendants provided suggests an inmate may grieve a transfer between facilities under SOP 220.03. This is underscored by comparing the sections related to transfers between facilities (subsection f) and housing, assignments, program assignments, security classifications, or work assignments (subsection g) in SOP 227.02. Doc. 13-2 at 10; Doc. 17-2 at 10. Subsection g provides a specific directive to inmates to appeal housing assignments, program

assignments, security classifications, or work assignments using to the classification committee using the procedure laid out in SOP 220.03.  However, subsection f provides no directive to proceed under SOP 220.03 to file complaints related to transfers between facilities.  Thus, contrary to Defendants Gibbons, Wright, and Caldwell's arguments, Plaintiff was not required to pursue administrative remedies under SOP 220.03 because no remedy was available under that procedure.  Staley v. Emmons, No. CV 318-036, 2019 WL 1302633, at *4 (S.D. Ga. Mar. 21, 2019) ("The Court could not find an administrative process related to a facility transfer in the Classification SOP.").  Further, as Defendants Gibbons, Wright, and Caldwell acknowledge, under SOP 227.02, Plaintiff was unable to grieve his transfer.

In sum, the PLRA mandates an inmate exhaust "such administrative remedies as are available" prior to filing suit. 42 U.S.C. § 1997e(a).  The Supreme Court has explained the plain meaning behind the word available as to those grievance procedures that are "'capable of use' to obtain 'some relief for the action complained of.'" Ross, 136 S. Ct. at 1859.  Plaintiff did not fail to exhaust administrative remedies because nothing in the SOP Defendants provided indicates Plaintiff could challenge the basis of his claims, i.e., a prison transfer, through those procedures.  Thus, Defendants have not carried their burden to establish a procedure addressing inmate transfers exists and Plaintiff failed to follow it.  Therefore, dismissal is not appropriate.  See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff.").  Accordingly, I **RECOMMEND** the Court **DENY** Defendants Gibbons, Caldwell, and Wright's Motion to Dismiss.  Doc. 13.

### 2. *Defendant Johnson has not demonstrated remedies are available regarding Plaintiff's retaliation claim against Defendant Johnson.*

Defendant Johnson also argues Plaintiff's Complaint should be dismissed because he failed to properly exhaust his administrative remedies. Docs. 17, 24. Defendant Johnson makes the same arguments as the other Defendants—Plaintiff did not file did not file a grievance within 10 days relating to a an allegedly fabricated disciplinary report and retaliatory transfer and did not file a grievance within 10 days of arriving at Ware State Prison. Doc. 17-1 at 7–8; Doc. 24 at 1–3. Plaintiff also responded to Defendant Johnson's Motion to Dismiss. Doc. 21. Plaintiff argues his retaliation claim against Defendant Johnson should not be dismissed for failure to exhaust because disciplinary reports are not a grievable issue. Doc. 21-1 at 2.

For the same reasons as above, Defendant Johnson has failed to establish there was an available administrative remedy relating to inmate transfer that Plaintiff failed to exhaust. Accordingly, I **RECOMMEND** the Court **DENY** Defendant Johnson's Motion to Dismiss. Doc. 17.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **DENY** Defendants' Motions to Dismiss. Plaintiff's claims against Defendants, including his claims against Defendants Coleman and Wicker, remain pending.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a

party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 5th day of January, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA